```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 03/19/2014
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
KENNETH GRIMES,

                           Plaintiff,          13 Civ. 5052 (KBF)

          -v-                         MEMORANDUM
                                         DECISION & ORDER

CAROLYN W. COLVIN, Acting Commissioner
of Social Security,

                           Defendant.
------------------------------------------------------------------X

KATHERINE B. FORREST, District Judge:

      Plaintiff pro se Kenneth Grimes seeks review of the decision by defendant Commissioner of Social Security ("the Commissioner") denying his disability insurance benefits and supplemental security income ("SSI") applications. In August 2011, plaintiff filed his applications, which alleged that he had been disabled since January 29, 2010 due to post-traumatic stress disorder (PTSD), back injury, knee injury, and high blood pressure. (Tr. 92–106, 128, 132.) In September 2011, the Social Security Administration denied plaintiff's applications (Tr. 48–54), and plaintiff timely requested a hearing before an administrative law judge ("ALJ") (Tr. 56–58). ALJ Mark Solomon held a hearing on May 15, 2012 (Tr. 24–41) and issued a written decision denying plaintiff's applications on June 15, 2012 (Tr. 9–23). The Appeals Council denied review on May 28, 2013. (Tr. 1–5.)

      On July 16, 2013, plaintiff filed this action seeking judicial review of the ALJ's decision. (ECF No. 2.) Now before the Court is defendant's December 23,

2013 motion for judgment on the pleadings.  (ECF No. 13.)  Plaintiff filed no opposition.  For the reasons set forth below, defendant's motion is GRANTED.

I.  FACTUAL BACKGROUND

The Court recites here only those facts relevant to its review.[1]  The Court reviews the ALJ's decision to determine whether there is substantial evidence to support his finding that plaintiff was not disabled because he could perform the requirements of his past relevant work as a drug counselor.

In his September 2011 application, plaintiff stated that he had chronic muscle spasms, nightmares, and severe headaches.  (Tr. 143.)  Plaintiff also stated that he had unsteady balance during bathing; that he was unable to lift due to a chronic back and neck condition; that he was unable to stand or sit for long periods; that he needed a cane when walking long distances or up flights of stairs; and that he had blurred vision due to headaches.  (Tr. 143, 147–49.)  Finally, plaintiff stated that stated that he suffered from a lack of concentration, that he was paranoid and distrustful, and that he had short-term memory loss.  (Tr. 149, 150.)

In October 2009 and October 2010, Dr. Aerie Rim and chiropractor Raymond H. Wolff assessed plaintiff as having chronic low back pain and mild or minimal degenerative joint disease.  (Tr. 231, 212.)  Throughout 2009, plaintiff received chiropractic treatments for low back pain, which helped relieve his pain; Dr. Rim again referred plaintiff to a chiropractor in October 2010.  (Tr. 221–22, 230–33, 238–40, 212.)  A January 2011 physical examination revealed minor pain in plaintiff's cervical spine and continued chronic neck and lower back pain; plaintiff was

---

[1] A thorough summary of plaintiff's medical history is set forth in the administrative record.

discharged in stable condition. (Tr. 184.) In April 2011, plaintiff told Dr. Rim that he was benefiting from his chiropractic treatments, that he was taking pain medication as needed, and that he intended to file an SSI application. (Tr. 176.) In May 2011, plaintiff told Dr. Rim that he wanted to restart chiropractic sessions. (Tr. 175.) Dr. Rim noted that plaintiff's gait was normal and that he had no motor weakness. (Id.) An August 2011 CT scan of plaintiff's cervical spine showed no evidence of compression fracture. (Tr. 405.)

In October 2009, psychologist Melissa Altman found that plaintiff had significant symptoms of depression and symptoms of PTSD based on his military service in Saudi Arabia. (Tr. 336, 337.) Dr. Altman found that plaintiff was oriented in all spheres but seemed guarded and depressed. (Tr. 337.) She found no evidence of psychomotor retardation, agitation, or psychosis. (Id.) Dr. Altman diagnosed plaintiff with PTSD, dysthymic disorder, cocaine dependence, alcohol dependence, high blood pressure, high cholesterol, and back and knee problems. (Id.) She also found that plaintiff was able to care for activities of daily living. (Id.)

In November 2009 and February 2010, Dr. Martin Gluck evaluated plaintiff for headaches and migraines. (Tr. 225–26, 221–22.) Dr. Gluck opined that plaintiff's headaches were possibly caused by muscular tension, and prescribed medications. (Id.) At a May 2011 mental intake evaluation, plaintiff did not report any acute psychiatric symptoms. (Tr. 175.) In July 2011, plaintiff stated that he had been feeling depressed since he lost his job in January 2011 and that he had sleeping problems. (Tr. 349.) Plaintiff did not report any past depressive episode,

3

mania, psychotic symptoms, appetite change, fatigue, feelings of worthlessness, or harmful ideations.  (Id.)  Plaintiff stated that he had experienced anxiety and palpitation but not to the level of a panic attack, and he reported multiple stressful events while in the military.  (Id.)  Plaintiff's affect was mildly anxious, but appropriate and full-range.  (Tr. 350.)  Plaintiff's thought process was linear and goal-directed.  (Id.)

In December 2011, Dr. Rim completed a medical report in which she diagnosed plaintiff with migraines, hypertension, PTSD, cervical pain, and low back pain caused by degenerative disc disease.  (Tr. 537.)  According to Dr. Rim's report, plaintiff experienced pain from heavy lifting, pulling, and pushing; plaintiff could sit for up to five hours in an eight-day workday, stand for up to four hours, and walk for up to two hours.  (Tr. 538, 539.)  Plaintiff could never lift or carry more than five pounds and could never bend, squat, or climb.  (Tr. 539.)  Dr. Rim opined that plaintiff had multiple clinic appointments weekly that would prevent full-time employment.  (Tr. 541.)

In May 2012, plaintiff testified that he had worked as a drug counselor from approximately 1998 to 2011, with his final position in 2011 lasting two months.  (Tr. 28, 31, 39.)  He stated that he quit his job because he felt that it was beyond his expertise.  (Tr. 30–31.)  Plaintiff further testified that he had problems with remembering and completing assignments, doing tasks, and developing relationships, due to paranoia.  (Tr. 32, 38, 40.)  Plaintiff also stated that he was taking pain medication and using a TENS machine to relieve neck and back pain

4

and spasms. (Tr. 32, 40.) Plaintiff testified that he could only sit down for 45 minutes to an hour before he needed to stand, but that he could stand for a couple of hours; when he was working as a drug counselor, plaintiff was behind a computer for six or seven hours. (Tr. 37.)   Finally, plaintiff testified that he was able to care for his own personal needs, such as dressing, shaving, and bathing, and that his girlfriend did all the personal chores. (Tr. 35, 36.)

In September 2012, a state agency consultant, B. Rury, found that plaintiff could both stand and sit for up to six hours in an eight-hour workday and that he should not frequently lift more than ten pounds. (Tr. 519, 523.) The consultant found that plaintiff was capable of performing his past work and was not disabled. (Tr. 522.) Also in September 2012, Dr. R. Altmansberger, a psychiatrist, opined that plaintiff had mild restrictions in activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, and pace. (Tr.  514.) Dr. Altmansberger opined that plaintiff could perform his past work and was not disabled. (Tr. 526.)

II.     STANDARDS OF REVIEW

   A.     <u>Judgment on the Pleadings</u>

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The Court reviews Rule 12(c) motions for judgment on the pleadings under the same standard as Rule 12(b)(6) motions to dismiss. <u>Bank of N.Y. v. First Millennium, Inc.</u>, 607 F.3d 905, 922 (2d Cir. 2010). "To survive a Rule 12(c) motion, the complaint must contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (internal quotation marks omitted).

Even where a motion stands unopposed, the Court does not embrace default judgment principles. "Although the failure to respond may allow the district court to accept the movant's factual assertions as true, the moving party must still establish that the undisputed facts entitle him to a judgment as a matter of law." Vt. Teddy Bear Co. v. 1800 Beargram Co., 373 F.3d 241, 246 (2d Cir. 2004) (citations and internal quotation marks omitted); see also Martell v. Astrue, No. 09 Civ. 1701 (NRB), 2010 WL 4159383, at *2 n.4 (S.D.N.Y. Oct. 20, 2010) (applying the same standard in a pro se unopposed SSI appeal).

The Court "liberally construe[s] pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007) (citation and internal quotation marks omitted).

B.   The Disability Standard

The Commissioner will find a claimant disabled under the Social Security Act ("the Act") if he or she demonstrates an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and

work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner uses a five-step process when making disability determinations. See 20 C.F.R. §§ 404.1520, 416.920. The Second Circuit has described the process as follows:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. Part 404, Subpart P, App. 1 ["Appendix 1"]. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity ["RFC"] to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999).

C.   Review of the ALJ's Judgment

The Commissioner and ALJ's decisions are subject to limited judicial review.

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). The factual "findings of the [Commissioner] are conclusive unless they are not supported by substantial evidence." Diaz v. Shalala, 59 F.3d 307, 312 (2d Cir. 1995) (citing 42 U.S.C. § 405(g)). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a

7

conclusion." Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (internal quotation marks omitted).

The Court must consider the record as a whole in making this determination, but it is not for this Court to decide de novo whether the plaintiff is disabled. See Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002) ("Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, we will not substitute our judgment for that of the Commissioner."); Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998).

The Court must uphold the Commissioner's decision upon a finding of substantial evidence, even when contrary evidence exists. See DeChirico v. Callahan, 134 F.3d 1177, 1182–83 (2d Cir. 1998); Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder.").

III. DISCUSSION

The ALJ correctly conducted the five-step analysis required by 20 C.F.R. §§ 404.1520 and 416.920. First, the ALJ determined that plaintiff had not engaged in substantial gainful activity since his alleged onset date of January 29, 2010. (Tr. 14.) At step two, the ALJ found that plaintiff's mild lumbar and cervical disc disease and his PTSD constituted "severe" impairments, because they imposed more than minimal limitations on plaintiff's ability to perform basic work activity, but that his migraine headaches, depression, and alcohol and drug abuse were not severe. (Tr. 14, 15.) At step three, the ALJ determined that plaintiff did not have

an impairment or a combination of impairments that met or medically equaled the severity of one of the listed impairments in Appendix I. (Tr. 15.) The ALJ then found that plaintiff had the RFC to perform "light work," which involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. See 20 C.F.R. §§ 404.1567(b), 416.967(b). (Tr. 16.) Finally, at step four, the ALJ concluded that plaintiff could perform his past relevant work as a drug counselor, which the U.S. Department of Labor's Dictionary of Occupational Titles ("DOT") defines as a "sedentary skilled job." (Tr. 20.)

Substantial evidence supported each of the ALJ's determinations.

First, substantial evidence supported the ALJ's findings that plaintiff's migraines, depression, and alcohol and drug abuse were not severe impairments. Plaintiff carried the burden of presenting evidence that his impairments were not severe. Melville v. Apfel, 198 F.3d 45, 51 (2d Cir. 1999). The ALJ noted that, while plaintiff claimed he had migraine headaches, there was no mention of "intractable migraine" or "status migrainosus," a migraine lasting over 72 hours. (Tr. 15.) Plaintiff alleged a long history of headaches, but also stated that he was able to work from 1998 to 2011. (Tr. 153, 177.) Furthermore, plaintiff had not returned to see Dr. Gluck for follow-up appointments for headaches (Tr. 226). See Arnone v. Bowen, 882 F.2d 34, 39 (2d Cir. 1989) (explaining that the ALJ "properly attributed significance to [the plaintiff's] failure to seek any medical attention"). While plaintiff showed symptoms of depression in 2009 (Tr. 336, 337), no record evidence indicated that plaintiff was being treated for depression, and plaintiff did not report

9

depressive episodes in July 2011 (Tr. 349).  Finally, plaintiff had not used alcohol or cocaine since 1997.  (Tr. 31, 335, 509.)[2]

Second, plaintiff failed to prove that his lumbar and cervical disc disease and his PTSD met or equaled a listed impairment.  Plaintiff also carried the burden of proving that his impairments met or equaled a listing in Appendix 1.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1985).  The ALJ considered the listing for musculoskeletal impairment (Tr. 15), but appropriately found that the record contained evidence of only mild limitations on plaintiff's motion, strength, and neurological condition (Tr. 175, 212).  Rather, plaintiff's treatment was conservative and consisted of medications and chiropractic care.  (Tr. 175, 184.)  Similarly, the ALJ properly found that plaintiff's PTSD did not cause more than a moderate impairment in social functioning and mild limitations in activities of daily living and concentration.  (Tr. 15, 16.)

Third, substantial evidence supported the ALJ's findings concerning plaintiff's RFC, namely that plaintiff could perform light work involving sitting for up to six hours, standing for up to four hours, and walking for up to two hours per day, but without working around large crowds and without lifting more than five pounds frequently or ten pounds occasionally.  (Tr. 16–19.)  The ALJ's RFC determination was slightly more restrictive than Dr. Rury's opinion, which stated that plaintiff could stand and sit for up to six hours and should not frequently lift

---

[2] Even if the ALJ had erred at step one, any such error would be legally harmless, because the ALJ proceeded to step two and thus plaintiff's "claim proceeded through the sequential evaluation process." Stanton v. Astrue, 370 F. App'x 231, 233 n.1 (2d Cir. 2010).  Furthermore, the ALJ here "considered the combination of impairments and the combined effect of all symptoms in making his determination," as in Stanton.  Id.

more than ten pounds (Tr. 519), but was slightly less restrictive than the opinion of Dr. Rim, who opined that plaintiff could sit for up to five hours (Tr. 539.)

      The ALJ reasonably accorded greater weight to the opinions of the state consultants than to that of Dr. Rim.  (Tr. 19.)  Consultants' opinions constitute substantial evidence, and may "override treating sources' opinion provided they are supported by evidence in the record."  Diaz, 59 F.3d at 313 n.5.  Meanwhile, the ALJ appropriately found that other record evidence contradicted Dr. Rim's restrictive opinion.  (Tr. 19.)  Such a determination was well within the ALJ's discretion.  See Alston, 904 F.2d at 126 ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder.").

      Finally, substantial evidence supported the ALJ's conclusion that plaintiff retained the ability to perform his past relevant work as a drug counselor.  (Tr. 20.)  Plaintiff carried the burden to prove "an inability to return to his former type of work and not just to his former job."  See, e.g., Villa v. Heckler, 79 F.2d 794, 798 (9th Cir. 1986).  Here, the ALJ appropriately found that plaintiff's RFC did not preclude him from meeting the physical and mental demands of his past relevant work as a drug counselor.  (Tr. 20.)  Plaintiff described his previous job as involving office work performed sitting down and requiring six to seven hours per day on a computer, and not involving any exposure to crowds.  (Tr. 37.)  Similarly, the DOT describes the job of drug counselor as requiring sedentary work and does not mention exposure to crowds.  Because plaintiff could perform his past relevant work, he was not disabled within the meaning of the statute.  (Tr. 20.)

Thus, the ALJ properly conducted the five-step sequential analysis, and substantial evidence supported his determinations at each step. The Court therefore must uphold his finding that plaintiff was not disabled. See, e.g., Shaw, 221 F.3d at 131.

IV. CONCLUSION

For these reasons, defendant's motion for judgment on the pleadings is GRANTED. The Clerk of Court is directed to close the motion at ECF No. 13 and to terminate this action.

SO ORDERED.

Dated:  New York, New York
        March 19, 2014

                                                          KATHERINE B. FORREST
                                                          United States District Judge

CC:
Kenneth Grimes
101-125 West 147th Street
Apartment 19J
New York, NY 10039
PRO SE